# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-0017V
UNPUBLISHED

| | |
|---|---|
| ANTHONY LAWLER,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: June 24, 2020<br><br>Special Processing Unit (SPU);<br>Findings of Fact; Onset; Tetanus<br>Diphtheria acellular Pertussis (Tdap)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*John Robert Howie, Jr.*, Howie Law, PC, Dallas, TX, for petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for respondent.

## FINDINGS OF FACT[1]

On January 3, 2019, Anthony Lawler filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table claim that he suffered a left shoulder injury related to vaccine administration ("SIRVA") after receiving the tetanus, diphtheria, acellular pertussis ("Tdap") vaccine on July 12, 2017. Petition at 1, ¶¶ 1, 20. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination. Specifically, Petitioner suffered left shoulder pain immediately upon vaccination.

## I.  Relevant Procedural History

Shortly after filing his petition, Anthony Lawler filed the required medical records. Exhibits 1-11, ECF Nos. 6-7; Statement of Completion, ECF No. 8. Following the initial status conference, Respondent was ordered to provide his tentative position on the merits of Petitioner's claim. Order, issued May 17, 2019, ECF No. 11.

On January 24, 2020, Respondent indicated he opposed compensation in this case. Status Report, ECF No. 17. In his Rule 4(c) report, he argues that Petitioner has failed to establish that the onset of his left shoulder pain occurred within 48 hours of vaccination and that there appears to be an alternative cause for Petitioner's symptoms. ECF No. 18. Regarding onset, Respondent mentions two instances in the medical records when Petitioner provided imprecise information regarding the onset of his pain and one instance when he mistakenly indicates his vaccination occurred on July 1, rather than July 12, 2017. *Id.* at 5-6.

Thereafter, the parties were informed that I intended to address the factual issue of onset. Informal Remark, dated Mar. 27, 2020. During the subsequent week, Petitioner filed documentation disclosing his work schedule from July 1 through September 30, 2017[3] and updated medical records from physical therapy ("PT") he attended approximately one year after vaccination. Exhibit 12, Mar. 30, 2020, ECF No. 19; Exhibit 13, filed Apr. 2, 2020, ECF No. 20. A briefing schedule was set. Non-pdf Order, issued Apr. 8, 2020.

Both parties filed their briefs on May 26, 2020. Respondent's brief reiterates the arguments set forth in his Rule 4(c) report. ECF No. 21. Petitioner addresses these arguments in his brief, asserting that "Respondent has cherry-picked three statements which are taken out of context and which fail to rebut the entirety of the evidence." Petitioner's Brief Regarding Onset at 5, ECF No. 22. Petitioner discusses the additional information contained in these records. *Id.* at 7-9. He also maintains that multiple physical examinations performed by different treating physicians support his description of a painful bump at the vaccination's injection site. *Id.* at 9-10. While acknowledging that he may have occasionally been a poor historian, Petitioner argues that he "consistently related his left shoulder symptoms to his Tdap vaccination." *Id.* at 10.

---

[3] Petitioner is in the merchant marines. *E.g.*, Petition at 3. These records show he was on the vessel *Jane A. Bouchard* from July 19, 2017 through August 9, 2017 and September 9 through 30, 2017. Exhibit 12.

2

Petitioner makes these same arguments in his response filed on June 10, 2020. Petitioner's Response Brief Regarding Onset ("Pet. Response"), ECF No. 23. In both filings, he also disputes Respondent's statement of the facts in the case.[4]

The matter is now ripe for adjudication.

## II.    Issue

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) I.C & II.C. (2017) (Tdap vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

## III.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. § 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, at *19.

---

[4] For example, Petitioner maintains he was not seen by his cardiologist on August 2, 2017, approximately three weeks after vaccination and two weeks before he was seen at urgent care for his left shoulder pain as Respondent asserts. Pet. Response at 1 n.1. A careful examination of the record cited by Respondent shows this entry is part of a progress note compiled on August 2, 2017, but was copied from the record of a March 28, 2017 visit. *Compare* Exhibit 6 at 161 (entry cited by Respondent) *with id.* at 146 (history in medical record from March 23, 2017 visit). Additionally, the work schedule provided by Petitioner shows he was at sea on August 2, 2017. Exhibit 12 at 2.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Finding of Fact

I make the finding regarding onset after a complete review of the record to include all medical records, affidavits, Respondent's Rule 4(c) report, additional evidence, and briefing by the parties. Specifically, I base the finding on the following evidence:

- The vaccine record establishes that Anthony Lawler was administered a Tdap vaccine intramuscularly in his left deltoid on July 12, 2017. Exhibit 2.

4

- The documentation provided by Petitioner indicates that he was at sea, aboard the *Jane A. Bouchard*, from July 17, 2017 (five days after vaccination) until August 9, 2017. Exhibit 12 at 1-2.

- Eight days after disembarking, on August 17, 2017, Petitioner visited an urgent care facility complaining of a lump in his upper left arm, intermittent, sharp, and stabbing pain with movement, and discomfort with range of motion past 90 degrees. Exhibit 9 at 12-15. Petitioner reported that his symptoms began one month prior and that his lump has been evident for about a month. *Id.* at 13, 15. Denying any injury or trauma such as pulling or pushing which would have caused his injury, Petitioner attributed his lump and left shoulder pain to the tetanus booster he received on July 17, 2017. *Id.*

- When Petitioner was seen by the orthopedic surgeon on September 8, 2017, he reported that his symptoms began in early July, and that he "felt [his injury] may be tetanus shot related." Exhibit 10 at 10. He added that "[s]ince that time, his symptoms have progressed and are now present on a daily basis." *Id.* The orthopedic surgeon noted Petitioner "has an associated lump or deformity in the anterior aspect of the deltoid area." *Id.*

- At his third appointment with the orthopedic surgeon on November 6, 2017, Petitioner again linked his injury to the Tdap vaccine he received in July. Exhibit 10 at 65. This record notes that Petitioner "is very adamant that his shoulder pain is most likely the result of an improperly performed tetanus injection." *Id.*

- When seen for a prostrate exam on February 14, 2018, Petitioner related "having received a tetanus shot in his left shoulder that caused him severe pain and bursitis which necessitated a cortisone shot." Exhibit 5 at 9. He expressed concern regarding future vaccinations. *Id.*

- During his initial PT evaluation on June 4, 2018, Petitioner again attributed his left shoulder pain to the "tetanus shot he received about 6 months or a year ago in the left side." Exhibit 13 at 7. According to Petitioner, "[r]ight after he had a tetanus shot, he had some pain in the arm which he expected, but then the pain got worse and he reported feeling a sharp pain in the front of the shoulder" with certain movement. *Id.*

- The physical therapist observed some tenderness in the left deltoid region and a bump on Petitioner's left deltoid. Exhibit 13 at 8. He described the bump as feeling fluid filled. Petitioner reported that the bump "has been there since the tetanus shot." *Id.*

The above medical entries show that Petitioner consistently connected his left shoulder injury to the Tdap vaccine he received on July 12, 2017, reporting pain and a lump since that time. Although not always precise when describing the onset of his pain

5

or timeframe since vaccination, he clearly expressed his belief that it was caused by the tetanus shot he received.

Petitioner provided better detail regarding the onset of his pain during his initial PT evaluation. He described immediate pain which increased thereafter. Additionally, multiple physicians and his physical therapist observed the lump on Petitioner's left deltoid, his tenderness, and his pain with movement.

Respondent correctly notes that when first seen by the orthopedic surgeon on September 8, 2017, Petitioner wrote on the intake form that his problem began on July 1, 2017 (which if true would predate vaccination). Exhibit 10 at 3. However, in this same record, it is noted that he verbally informed the surgeon that he believed his injury was linked to the Tdap vaccine he had received. *Id.* at 10. Petitioner most likely provided the July 1 date because he could not recall the exact date of his vaccination. In the history he provided verbally, he described the onset of his symptoms as "in early July." *Id.* I thus do not find that this specification of July 1st for onset undermines Petitioner's arguments about a post-vaccination, fairly immediate onset.

Respondent's other two critiques are similarly unpersuasive. Respondent stresses that during Petitioner's initial visit to urgent care on August 17, 2017, he described his pain as beginning one month earlier even though his vaccination was actually five weeks earlier on July 12, 2017. Exhibit 9 at 13. When first evaluated by the physical therapist on June 4, 2018, almost eleven months after vaccination, he indicated he had received the tetanus shot six months to one year ago. Exhibit 13 at 7. In both instances, Petitioner is simply being imprecise when providing these time frames. Both records contain other entries showing Petitioner clearly tied the onset of his pain and lump to the Tdap vaccine he received. For example, in the same June 4, 2018 PT record, Petitioner unequivocally states that he experienced pain right after receiving the tetanus shot and that the lump existed since vaccination. *Id.* at 7-8.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's left shoulder pain occurred immediately upon vaccination. Petitioner has satisfied the requirement for a Table SIRVA, that the onset of her shoulder pain began within 48 hours of vaccination.

### V. Scheduling Order

Given my finding of fact regarding the onset of Petitioner's pain, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

**Respondent shall file a status report indicating how he intends to proceed in this case by no later than <u>Friday, July 24, 2020</u>.** At a minimum, the status report shall indicate whether he is willing to engage in tentative discussions regarding settlement or proffer, is opposed to negotiating at this time, or that the Secretary has not yet determined his position. In the event Respondent wishes to file a Rule 4(c) report, he may propose a date for filing it, but shall indicate his position on entering into negotiations regardless of whether he wishes to file a Rule 4(c) report.

6

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master